Good morning, Your Honors. May it please the Court, my name is Ogochukwu Victor Ongweze for the appellant. I'll briefly address the issue that the Court raised yesterday regarding the Rule 41B dismissal, and I apologize for glossing over that fact in the brief. I believe the respondent did as well on the assumption that it was a Rule 12B dismissal. There was clearly an abuse of discretion in the Court dismissing the case pursuant to Rule 41B. The reason is that the five factors that are relevant for such dismissal under Rule 41B, which is an extreme remedy or extreme punishment for the Court to impose, do not exist. And those factors include willful disobedience of the Court order and disruption of the process of the Court interference with the judicial process and culpability of the litigant. In this case, none of those factors exist. Clearly what happened was the respondent filed a motion to dismiss. We opposed it. The Court granted the motion with leave to amend, and we did not amend. The Court at that point, though, did warn that if you didn't amend, there could be a sanction or a Rule 41 dismissal, right? Yes, the Court did warn that. So there was the notice issue, but the other five factors do not exist. And when the Court grants the claimant who believes that he has stated enough facts to constitute a cause of action has the right to stand on their complaint and say, my complaint is fine the way it is. I do not need to amend. But doesn't our Edwards case say that if you want to stand on your complaint, you need to notify the Court? Edwards versus Maren Park? No, Your Honor, it didn't say that. What it says there, and I read the case. I don't have the full case here in my briefcase. But it did say in that case that the plaintiff has the right to stand on their complaint. And refusing to amend a complaint is not a willful disobedience of a Court order. There is just a right that has been exercised by the plaintiff. So for the 41B dismissal to come in and then change the case from a 12B dismissal, which is reviewed de novo, to a 41B dismissal, which is reviewed for abuse of discretion, there has to be some willful disobedience of a Court order. Where do you get the idea that it has to be a willful disobedience? What case says that? Well, the factors that should be considered by the Court, Ebrahos versus Reynolds 965F2D916. I'm sorry, could you just say the name of that case again? I have to spell it here. Maybe I'm not pronouncing it correctly. E-H-R-E-N-H-A-U-S versus Reynolds R-E-Y-N-O-L-D-S 965F2D916. So it talks about culpability of the litigant. The litigant and the degree of prejudice to the defendant, amount of interference with the judicial process. So under number three, where it talks about culpability of the litigant is where there has been a willful disobedience of a Court order. Does it say willful disobedience? Does it say it turns on willfulness? Because I didn't think Edwards did really talk about willfulness at all. Edward didn't talk about willful disobedience. Edward is just for the when the Court dismisses a case, we leave to amend. The litigant does not have to amend. And the fact that you do not amend and exercise your right is not the factor that would be right. Did you ever, just getting back to an earlier question from Judge Freeland, did you ever tell the district judge, we are choosing not to amend? Did you ever file anything saying we declined to amend and we'll seek to appeal? No, we did not do that. I don't think that So you let the deadline the Court set pass without any communication with the Court. That is correct, Your Honor. But again, if we decide to stand on our pleading, I don't think that it's something that the Court needs to be communicated to that, well, we are not going to amend. We just want the case, we're going to let the case to be dismissed. And even if we do not do that, that does not arise to the amount of conduct of culpability that would give rise to a 421B sanction. But Edward says you have to give notice. I'm confused about why you think it matters whether it's willful. I'm still wondering, I'm still trying to find this case that you cited to see whether willfulness is actually a factor. Well, culpability of the litigant is a factor. It's 965F2D916, 10th Circuit, 1992. So is that a 10th Circuit case? Yes. So what about our Court? Edwards is from our Court. Edwards is from the Court here. Edward does not deal with the issue of the culpability, but the line of other cases that do follow the five-factor rule that have to be applied in a 421B analysis. And because of the drastic nature of the sanction, one of the other things the Court has to look at is whether there are lesser sanctions that could address the issue. And a lesser sanction is a plain dismissal under Section 12B, which basically is what should have happened in this case, and which, because both sides omitted it, is probably what both sides assumed it was a 12B dismissal rather than a 421B dismissal, which is correct. It's in the order as a 421B dismissal. But a lesser sanction of 12B would have been applicable because the plaintiff in this case stood on his right that the complaint states enough facts and was willing to stand on the complaint. But how would the Court have known that? How would the Court have known he was standing on his complaint? Well, if we do not amend within the time allowed by law, then that means we are not amending the complaint. But that's not what our Court's law says. It says you need to tell the Court. I mean, had you told your opposing party that you were standing on the complaint? Did anyone know why you had not amended? No, I didn't And the issues that were briefed in the motion, we felt that we had enough facts to proceed and that the Court's ruling on the motion to dismiss was incorrect. But that should have been addressed by the lesser sanction of a 12B dismissal rather than a 421B dismissal. Well, the dismissal entered by the Court says it's without prejudice, so it wouldn't strip your client of the ability to proceed in a new action or elsewhere. A Rule 12 dismissal would presumably be with prejudice. So there is a difference here, and it's to the benefit of your client, although the limitations period may have run in the meantime. Well, there may be a benefit in the dismissal, but in terms of the appellate review, my client is in a worse position with a 421B dismissal than a 12B dismissal. Well, I mean, if your client elects not to proceed, or if you elect not to proceed on behalf of your client in a new action, I'm not sure how that changes anything. If our case law says you have to tell the Court if you're not going to proceed, and if you don't, you may be subject to a Rule 41 dismissal, and that appears to be what happened here, I'm not sure what you're and then to review it in those terms? Yes, Your Honor. But that's not what the District Court did. Well, that's why we believe that the Rule 41B dismissal, when there was a lesser remedy or lesser sanction, which is the 12B dismissal. And it's a dismissal without prejudice, so it is a lesser sanction. If you elect or your client elects not to take it any further, that's an independent decision. Well, yes, Your Honor, but if it's dismissed without prejudice, and we are going to file on the same facts, then the case law is that when you file a case that has been dismissed before, and you file on the same facts again, it's subject to dismissal, and then this time dismissal with prejudice. So it wouldn't do us any good to file the same thing that we filed earlier, because we are not going to change it in any way. Do you have a citation to support the proposition that a dismissal without prejudice, if there's a new filing, automatically leads to a dismissal with prejudice? If it's dismissed at that point, it's going to be a dismissal with prejudice, Your Honor. I'm sorry, I got the notice very late. I want to make sure of this when you call, but that's the case law, Your Honor. And if we are going to refile exactly the same thing that we filed before, because we felt the facts were enough, it's going to be the same result. So there was really, it was going to be a waste of judicial effort to pursue that remedy, especially when we felt that we had enough facts to proceed. And the 12B dismissal would have been more appropriate so that this court can review the dismissal de novo, rather than for abuse of discretion. The district court didn't even really give reasoning in its initial dismissal, because it seems like it thought you were going to amend. So wouldn't that have been a hint that maybe the district court would like to know that you're not amending, and maybe a substantive decision would be helpful? In hindsight, maybe, Your Honor. But the 12B dismissal would have served just as well than a 1441B sanctioned dismissal. And that is what would have been the appropriate standard in this case, that it was abuse of discretion to dismiss it under Section 41B, instead of the 12B dismissal that the respondent was actually asking for. So you never told the other side that you were going to not amend an appeal either, right? You didn't tell anybody? I don't think I did. I don't recall having that discussion with the other side, honestly. I don't. Well, we didn't really cover the merits, but... Yeah, well, we'll give you a minute for rebuttal, and we'll hear from your opposing counsel. Thank you. Am I going to have time on the merits? Yes. Well, we'll see whether we get into the merits or not. Good morning. Karen Vogel on behalf of Allstate. I think that the Court has addressed the issue properly here, and the facts are correct that there was no connection made after the Court made its ruling and entered the judgment, or even before that, after the Court made its ruling and motioned to dismiss. There was no reason that we had to know whether they would or would not be amending the complaint. And it seems like all of the process that the Court put in its order, just granting the motion to dismiss, all... Well, let me just jump in. That order said nothing substantive about the case at all. And I have to be honest with you, as a sitting District Court judge, that order looked to me like one of the standard orders that you have on file when you have a case that you In other words, it looked to me like, I'm not saying this pejoratively, but it looked to me like the off-the-shelf kind of boilerplate order. And I don't believe there's any indication, you tell me why you think there is, this judge actually intended to sanction the other side for bad conduct. I don't see any evidence of that. Now, yes, the order refers to Rule 41B, but in my view, that was there because that kind of order is used for pro se litigants and a bunch of other cases that aren't necessarily applicable here. So how in any way can this be considered a dismissal as a sanction? You know, in the Link case that the Court also referred to, the Court, in that case, the Supreme Court talked about Rule 41B, and in it, the Court talked about the District Control of its docket, to be able to not let cases linger on, to proceed expeditiously, and that that authority is inherent. These are all well-established concepts, but I'm asking, what is the indication in this case that this judge intended to dismiss the case as a sanction, other than passing language  I think the indication in this case is because the Court gave every opportunity for them to engage before the Court took that step. There was no hearing. What's every opportunity to engage? If you look at the Court's order, the Court said, you can talk, please talk with opposing counsel. Please, you know, and the Court's order is fairly specific on that front, where it says that, where the Court says, the Court expects that defendant will agree to any amendments that will cure the alleged defects. So there was a process that the Court set up that said, here, I want you parties to come together and talk about how to fix these problems that are in the complaint. The complaint very carefully, not very carefully, the complaint is, is, is... You're not saying that someone, a party has no obligation. They can do exactly what your opponent said. They can say, I'm sorry, District Judge, you're, you're dead wrong. We're going right to the circuit. And then they need to tell the Court that. They don't need to have a conversation with you, and they don't need to amend. They can, they can choose not to do that. They can choose not to do that. And that's, there's no indication that they, that, that they, they didn't give any information to either the, you know, the party on the other side or to the Court that that was what their intent was. But, but what rule says, unless you advise the District Court specifically that you're standing on your absolute unquestioned right to appeal rather than amend, what rule says, oh, and by the way, if you don't send one line into the District Court saying you're doing that one line, your dismissal under 12B is suddenly going to become a 41B sanction? What case or law or rule says that? I think that right here, what the circumstances are is that the Court gave out, it's a very, gave an outline of a very specific procedure that they could follow that was, that they gave many opportunities for the, for the plaintiff's counsel and plaintiff to, to both tell the Court and to tell the other side what it intended to do with its complaint. And it said, you have until this time to amend your complaint. Certainly all of those. So how is the complaint supposed to be amended? I mean, one of the things that's confused me here, I go back and look at the motion that, excuse me, the motion to dismiss it was filed. And it's, it doesn't appear to be about technical deficiencies. It's a very substantive argument similar to the argument it made to us. So I'm sitting there wondering, well, what exactly is plaintiff supposed to do to meet the objections you've stated? I get the feeling maybe that somebody reached in the drawer and pulled out the wrong standard form of order, because I couldn't figure out what was the pleading deficiency here. Can you identify what the pleading deficiency is or what was supposed to be done? The pleading deficiency, I think, is that in the, in the complaint, it alleges that there was an, this, the at-fault driver was uninsured. But it also alleges that there was insurance for the at-fault vehicle. And, and the, and then it attached various exhibits that would show that, that showed that the problem was that the, that the at-fault insurer's policy, I'm sorry, the at-fault insurer wasn't saying that there wasn't coverage for the vehicle. Well, that's only if you accept Allstate's representation of what Alliance's position was. And Allstate doesn't have standing. That's hearsay. So I'm not sure why by any theory the exhibit should be taken as gospel truth. But this gets down to the substance of the case. Are you saying the amendment should be to detach the exhibit? I mean, that's not, that's not really going to advance the case any. So what's, what's he supposed to do to amend? So, so yes, Your Honor, our position was in both in the trial court, in the district court and on appeal, that, that the complaint was, was faulty as a matter of law. Substantively deficient. Not, not as deformed. So that's why this order from the district court caused me to scratch my head. I couldn't figure out what he's supposed to do. So I understand plaintiff's reaction. Now unfortunately, plaintiff is supposed to do something to tell the court I'm not going to file. But this whole thing seems to be off, off course from the get-go. And that, you know, that may be. The result is that you have an, a judgment from the court that was without prejudice, allowed them to refile their complaint, that to bring it again, if they could, could state a claim the second time around, that they didn't choose to do that. They didn't choose to amend their complaint either. That's turning into sort of a gotcha game. I mean, this is, this is a no argument case, an order that, I agree with Judge Clifton, it's a little hard to see what the point of amendment was, because there is no doubt in my mind, your argument to the district court was, as a matter of law, there is nothing that can go forward in this case. And I believe you even said you don't even have to look at the attachments to the complaint. As a matter of black letter law in California, this is barred. So now for some reason, and it's, and probably to be honest, it's because we have a very strong requirement in our circuit not to foreclose complaints on the original complaint. We have a very strong incentive from, in the case law, to allow amendment. You know, the district judge said, maybe this wonderful lawyer can come up with a theory that I just can't see, so I'm not going to foreclose that. But to flip all this now into a Rule 41B sanction for misconduct just seems not tenable to me. Yeah, actually, you know, if you call it a sanction, the fact of the matter is the court entered a judgment dismissing the complaint without prejudice, which, as the court has mentioned before, seems to be in a better position than they, than the plaintiff would have been otherwise. If you're saying that this court doesn't have jurisdiction now, over the- Well, I think the question is whether we review for abuse of discretion or de novo. So if we're reviewing a 12B-6, it would be de novo, but if we're reviewing a sanction, it's for abuse of discretion. So that's, I think, what's at stake here. And so reviewing it for, you know, I think the way we win- And it would be abuse of discretion about the applicability of the sanction rather than the merits. I mean, it puts us in a very different position. I think that under the case law, and under the Link case in particular, the Supreme Court, the U.S. Supreme Court gave broad discretion to district courts to control their courtrooms. So you didn't argue in your brief to us that this was a sanction rather than a 12B-6, did you? We did not. So have you waived the more favorable standard? Didn't you agree to de novo review for all purposes? We did address it as de novo review, Your Honor. Because you'd like to get a ruling as a matter of law on the insurance coverage question. Well, Your Honor, I think that that matter is, I mean, I think that that matter is clearly stated by California law, so I think we win on that point. So I, you know, I guess from my perspective, if it- I'm not sure that it matters, because on the merits, we- I think it's very clearly stated by California case law that coverage and saying that when you have an insured car, an insured vehicle, that that is not an uninsured motor vehicle for purposes of the statute. And that principle is very plainly stated, which is one of the reasons why- Well, I don't necessarily disagree with that in the case law, but in the statute, it does say that a motor vehicle is uninsured when there is the applicable insurance or bond, but the company writing the insurance or bond denies coverage thereunder. And I've just been having- I understand what the case law says, and I have my views on it, but how do you reconcile that statutory sentence with the case law? The same way the cases have, Your Honor. And the way that I think that they've done that is said that the coverage still deals with the car as a whole, and not with a particular claim made as to that car. And that's in all of the cases that have been cited in the briefs. The only difference is a dissent, and that dissent is the one that the plaintiffs rely on heavily, but it is a dissent. It is one dissent, and we have numerous cases that find to the contrary. The law in California is not the dissent. The law in California is as it's stated in those cases. Well, I look at the statute and have the same question that Judge Donato raised. Uninsured motor vehicle is defined as including, or there is the applicable insurance or bond, but the company writing the insurance or bond denies coverage thereunder, or refuses to make reservations, and so forth. How does this not fit exactly within that language? I'll refer you to the language directly from the cases that have been sued. I'm not asking you about the cases. I'm asking you from the statute. In a state of California where the statute and the case law make pretty clear that policies are to be read liberally in favor of the insured, because they're written by the insurance companies, and I look at a statute that says where there is a policy, but the company writing the policy denies coverage thereunder, and Alliance has denied coverage thereunder, why doesn't that fit the words of the statute? Why it doesn't fit the words of the statute is the reason why some of these cases that they're trying to distinguish, in those cases, if you read that way, if you read the statute that way, what you end up with is... That way is what I just read. That's English. And what I'm saying is the word coverage, the second use of the word coverage there, has been interpreted to mean, by the California courts, that that means coverage for the specific, for the vehicle. There has to be a denial of coverage for the vehicle. Why? The reason is because if you change that and make it coverage for the particular accident, what you end up with is a situation that was proposed in the Hoskin case and in the Denny case, where somebody's own insurance policy is found not to cover them for this particular accident, but the vehicle is still covered, and then they use that. They would be able to use that... That's not the problem here. We're not talking about somebody's own policy. You may be explaining why the cases are distinguishable from this situation. Why in this case? I mean, like the Mercury insurance case, that illustrates to me what the insured should expect to have happen. His own carrier came in, provided coverage, and then sought through subrogation to get the coverage paid by the carrier in the position of alliance here. Why shouldn't the insured expect his carrier to deal with that? Why is somebody who has his own coverage and has uninsured motorist coverage expected to say, well, sorry, you lose out both ways? The issue here, if you were to read the statute... I just did. Tell me in that statute where the interpretation you're offering comes from. I just don't see it. What I'm saying, Your Honor, is if you interpret the statute there to say that coverage means coverage for a particular accident and not just for the vehicle... Policy is supposed to be read in favor of the insured. Why am I taking this tortuous path to make sure that the insurance carrier gets off the hook? Your Honor, you'd have to read the statute consistently for every circumstance. We're talking about a statute here that has to be read consistently. That term coverage then would have to be read consistently so that it would... In the situation where you have somebody's own policy that is trying to be used to cover a particular accident as an uninsured motorist action, and there's an exclusion that says, no, you can't use your own policy to do that, then reading the statute so that coverage meant coverage for the vehicle was being denied... I'm sorry, for this particular accident was being denied... Is there any logic in this result from the insured's perspective? From the... I'm sorry, from the...  From the insured's perspective. From the insured's perspective, uninsured motorist protection is there to protect when the car is not insured. The car that hits you is not insured. No, that cannot be the case because the definition of uninsured motorist specifically includes or there is the applicable insurance or bond, but coverage is denied. So it can't be the case that uninsured motorist only means literally there's no insurance policy. The statute doesn't permit that result. That is the law in California. Okay. Can I ask? Go ahead. I know we're a little bit over... I know, yes. If we, just talking for the sake of argument, let's say we part a company with Hoskins and Denny and Farmers and those other cases, what would the result be? I mean, we can't bind California courts, right? It would just be... If you came to federal court, you'd get Law B. If you're in state court, you get Law A. Isn't that right? I think that's contrary to the way this court handles diversity issues. I think that this court is required to address or to apply the law in California as it is... As you would interpret the highest court of the land to... I'm sorry, court of the state to interpret it. And in this case, there is no other... You have no direction other than the courts of appeal. I suppose you could send the issue to the California Supreme Court and see if the California Supreme Court would take it up. But right now, what this court has to give it direction in this diversity action are these many cases from the courts of appeal that lay out the law a certain way. All of which you say come from a factual situation very different from this. Not all of them, your honor. Okay. I put you to Page.   I put you to Page. And Page is very much like this case. And at the end of it, the court says, I'll give you my vote directly from that case. But there was a third vehicle at issue in Page, right? The phantom vehicle. Yes. But as to the vehicle, at the very end of the... The court deals with that third vehicle separately. At the end of the opinion, when the court deals with the vehicle that actually caused the accident, the court said, coverage and claim are by no means synonymous. Indeed, it is practically a matter of common knowledge that an insurer against whom a claim is made will frequently deny... Well, why does it matter if there's no coverage? I mean, I know Denny and Hoskins had specific reasons why there was no coverage, but why does the principle of law in those cases turn on the specific reason why there's no coverage? I don't know that it matters why there's no coverage, your honor. I mean, that's the point, I think, is that they will frequently deny claims on issues relating to liability even though coverage is actually afforded. And that's the point, is that there could be coverage. There is coverage for the vehicle, but the insurers have to have the ability to say, no, we're not providing coverage for this particular accident. And if a vehicle that is claimed to be, the at-fault vehicle is claimed to be, the insurance company for that vehicle doesn't provide coverage for any reason. But you would agree the insurance company has to have some reason. For not doing it. Yeah, they can't just be arbitrary about it. And it may be that they could amend the complaint to allege a reason that is different than what we said. But that is the law in California. Thank you, counsel, for your argument. We will, we did get into the merits and we took you over your time on the procedure, so we'll give you five minutes for rebuttal. Thank you, your honor. The mistake that the court, the district court made and which the respondent is making is that they failed to recognize that under 115802B, there are four definitions of uninsured motorist vehicle. And they concentrate on just one, which is the first section where it says that it's a motor vehicle for which there is no insurance. That's just one section. And all the cases that were cited and discussed by the respondent in motion to dismiss dealt with that first section. And we distinguished those. So what about Paige, though? I think you're, I agree with your opposing counsel that her best case is Paige talking about the distinction between coverage and claim. Two cases, actually, your honors. And this might be a case of first impression on the application of that second definition of uninsured motorist, which is where there is coverage, where there's insurance, but the insurance company denies coverage. Only two times has it been discussed. In length, by the dissent in Mercury and Enterprise, and then partially in Paige. But the difference between this case and Paige is that in Paige, the insurance company did not deny coverage. They just denied the claim. We're not going to pay. But that's true here, too, according to your allegations, isn't it? They say, yes, we have insured this car, but because they're not cooperating about the facts of this claim, we're denying this claim. But they didn't say that. They just say we deny coverage, which is what the letter says. Well, I don't know. I thought you said in your allegations that Alliance, I'll have to find the exact wording, but I thought you said Alliance was the insurer. Alliance denied coverage. So you can have insurance on your vehicle, but there is no coverage at a particular point in time. It happens all the time where there's insurance on your vehicle, but for some transient reason, there's no coverage. For example, you have insurance on your car. The car is stolen and driven by – So you said they denied coverage for the accident, but isn't that like a claim under Paige? No, Your Honor. When you deny a claim, you're saying, well, we have coverage, but we are just not liable for this claim. And it happens all the time. An insurance company has the right to say, well, we have coverage, but we are not going to pay you. But when you're saying we have no coverage, then you're not looking at the merits of the claim. You're just saying we have no coverage. In that instance, the right of the insurer to have the UM coverage is then to go collect from his insurance company, and then that gives his company the right of subrogation against the insurance company that denies coverage. And then when they sue that company or the insurer of that company, that insurer would have a backfired claim against his own insurance company, which is why insurance companies don't deny coverage lightly. So the letter from Alliance – now, I don't know if you're arguing a tearsay, but the letter says that no coverage existed for this particular accident. Yes. It says no coverage. It didn't say we are denying the claim because we feel something is wrong with the claim. We're just saying we don't have coverage. And that's what that second prong says. When there is coverage, but the insurance company denies coverage or refuses to provide coverage except on conditions. And that second prong of 115802B has never really been considered by any case. This is first impression. All the cases cited dealt with the first section, which clearly says it relates to a motor vehicle for which there is no insurance at the time of the accident. Yes, under that section, U.M. definition is based on the vehicle, not on the driver. But under the other sections, it has nothing to do with the vehicle. And if you look at the fourth definition of the U.M. coverage, it clearly states that the determination could be made based on either the owner or the operator of the vehicle. So it's not true that the law in California for all cases is that U.M. coverage depends on the insurance status of the car and not of the driver. No case has dealt with this issue, and the reason why probably it hasn't been done for so many years that this statute has been in place is because it's so clear that when coverage is denied, the U.M. claim, the U.M. coverage of the other driver comes into place right away. I've done this for 25 years. This is the first time that I've had coverage denied, and then my client's own carrier says there's no U.M. coverage. That is clearly what that second section of the definition in 115802B is for. So all the cases are different. Denny, Hoskin, and the other cases are different. Page is closed, but Page was denied of a claim, which happens all the time, and which is what the court in the last paragraph – This case involves denial of a claim, too, right? No, denial of coverage is different from denial of a claim. So you could file a claim – It's like semantic, though. It's denial of coverage for the claim. They don't deny that they are insuring this car. For example, you have two cars colliding at an intersection. One is going south. The other one is going east. There's a collision. You file a claim. The insurance company says, well, we deny your claim because we feel you ran the red light. That's a denial of a claim, as opposed to saying there's no coverage. So we don't even consider whether you have a claim or not. That is what denial of coverage means, and that is what happened in this case. But sometimes coverage in the case law seems to be meaning insurance of the vehicle or person. Well, that is the first section, and in the Hoskin case and in the Denny case, those vehicles that were in play were statutorily and contractually excluded as insured vehicles because those vehicles are excluded. So those were excluded right off the bat. But the court then took a passage from one treatise and said, well, uninsured motorist vehicle depends on the car, not on the driver. But you are not. That is for the first definition. You have three other definitions. I thought the alliance letter that you attached to your complaint, so it was incorporated by reference. I thought that letter said you are insured, but we are denying coverage for this claim or accident. So in other words, to Judge Friedland's point, there's not a high degree of precision in the use of the terms coverage, claim, and even maybe an accident, but certainly with coverage and claim. So the gist of the letter was, yes, you have a policy with us, but in this particular incident, we're not going to cover you. Now, the next step, whether it gets in or not, I don't know, because you haven't been cooperating. Okay? But I mean, isn't that a fair reading of the alliance letter you attached to your complaint? Well, it's nothing about it not being cooperative language. That's something that's... Skip that part. Yes. But when the insurance company says we have coverage, we have insurance, but we are denying coverage. This is specifically the language of the statute, which states where there is the applicable but the insurance company denies coverage or refuses to afford coverage except on conditions. That's purely what the statute says, and that's what happened in this case. They denied coverage. They didn't deny the claim. They just said, we have no coverage. So move on. We are not going to even consider who is right or who is wrong, as opposed to Page, where the company felt, well, our own insurance wasn't wrong, wasn't liable for the accident, so we denied the claim. And the court, in the last paragraph, took the page to say there's a difference between denial of a claim and denial of coverage. And in that case, the plaintiff pled that his claim was denied. And the court hung on that. So by argument, had he pled that there was denial of coverage, the result probably would have been different. So there is a subtle difference between your claim is denied and coverage is denied. Coverage is denied falls under the definition in the statute. Claim is denied means we'll file a lawsuit against us. We don't think we are liable for this accident, even though we have insurance. In this case, they say, well, there's insurance, but we are not going to afford coverage for the accident. And that is what that second definition under that statute brings into play. And like I said, the only place where it's really been discussed in detail, unfortunately, in a dissent, is Justice Johnson in the Mercury and Enterprise case. And he made clear that- I don't think that discussion was particularly enlightening. It was a one-line statement with no citation to any cases, and it did not address Denny or Hoskins. I mean, I don't- But Mercury- I don't find that dissent to be particularly useful for you. Well, Judge Johnson did go into some detail about why he felt that the position that Enterprise took was not technically denial of a claim, but denial of coverage. And that is why he felt that it should have been a U.M. claim, because the coverage was denied. Although the other justices felt that it was actually a subrogation claim under an uninsured motorist coverage, which they decided on that basis, that because Mercury paid without ensuring that the coverage available under Mercury had been fully exhausted, so there was no Justice Johnson did go and say, well, if we take Mercury's position to be a denial of coverage, rather than denial of claim, then that is what this section is for. And there is no other case where it has been discussed in detail. The closest is page-on-page is just one paragraph, but I think Justice Johnson went into, you know, into quite a lot of detail in discussing why he felt that what Enterprise did was denial of coverage, rather than denial of a claim, as the other justices saw it in that case. So this hasn't been addressed, and I think the reason is simple. When coverage is denied, everybody knows that triggers a U.M. coverage of your insured, and they take care of it, and then they file a subrogation claim against the other insurance company, and the insured has a right to sue them for bad faith for denying coverage on his vehicle if there's coverage. But there are legion cases where a car is insured, but there's no coverage. Like I said, if the car is stolen, there's no coverage during that period when the car is stolen. There's still insurance, but the insurance is put on hold until that transient event expires. Or somebody picks a car that is insured without the consent of the owner and drives it. For that period, there is no coverage, because there's a violation of the policy, or the car is insured and causes injury intentionally. The car is insured, but there's no coverage, because there's a violation of the policy. There's a pause in the policy during that transient period, and the car is considered uninsured for that purpose. And that is what Justice Johnson says. When that happens, you then move a car that is otherwise insured from that classification to an uninsured vehicle until the event causing it to be uninsured is over, and then it becomes insured again under the terms of the policy. Thank you, counsel. Thank you both sides for the helpful argument. The case is submitted.
judges: Clifton, Friedland, Donato